UNITED STATES DISTRICT COURT`
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SAFE HARBOR POLLUTION INSURANCE,
STARR INDEMNITY & LIABILITY COMPANY,
ARGONAUT INSURANCE COMPANY AND
BERKSHIRE HATHAWAY SPECIALTY
INSURANCE COMPANY,

                                       Civ. 18-8512

                Plaintiffs,

                                       **COMPLAINT**

     -against-

KLAWOCK OCEANSIDE, INC.

                Defendants.
-----------------------------------------------------------------X

        Plaintiffs SAFE HARBOR POLLUTION INSURANCE, STARR INDEMNITY

& LIABILITY COMPANY, ARGONAUT INSURANCE COMPANY and BERKSHIRE

HATHAWAY SPECIALTY INSURANCE COMPANY (collectively "Plaintiffs"), by their

attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against the defendant

KLAWOCK OCEANSIDE, INC. ("KLAWOCK" or "Defendant"), allege upon information and

belief as follows:

## JURISDICTION

        1.    This action is filed under and pursuant to the Federal Declaratory Judgment

Act, 28 U.S.C. §2201.

        2.    The following issues constitute questions of insurance coverage under an

Admiralty or Maritime contract of insurance and thereby come within the Admiralty and

Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. §1333 et

seq., and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the

Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

3.      An actual controversy of a justiciable nature exists between Plaintiffs and Defendant involving the rights and obligations under a marine contract of insurance and depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

## VENUE

4.      Pursuant to the terms of the subject insurance policy, the venue for this action is proper in the United States District Court for the Southern District of New York

## PARTIES

5.      At all relevant times, STARR INDEMNITY & LIABILITY COMPANY ("STARR") was and is an insurance company duly organized under and existing by virtue of the laws of the State of Texas with its principal place of business in New York.

6.      At all relevant times, ARGONAUT INSURANCE COMPANY ("ARGONAUT") was and is an insurance company duly organized under and existing by virtue of the laws of the State of Illinois with its principal place of business in Texas.

7.      At all relevant times, BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY ("BERKSHIRE") was and is an insurance company duly organized under and existing by virtue of the laws of the State of Nebraska with a place of business in Nebraska.

8.      At all relevant times, SAFE HARBOR POLLUTION INSURANCE ("SHPI") was and is a managing general agent of STARR, ARGONAUT and BERKSHIRE duly organized under and existing by virtue of the laws of the State of Rhode Island with its principal place of business in Massapequa, New York.

9.     At all relevant times, KLAWOCK OCEANSIDE, INC. ("KLAWOCK") was and is a corporation with an office and principal place of business in Poulsbo, Washington.

10.     At all relevant times, the F/VAKUTAN was steel hulled, twin diesel powered fish-freezer processing vessel bearing Official Number of 288598 (the "vessel").

11.     At all relevant times, the F/V AKUTAN was owned and operated by KLAWOCK.

## THE POLLUTION POLICY

12.     Pursuant to an application of insurance, SHPI issued Policy No. V-13741-17 to KLAWOCK, which provided certain pollution liability insurance for the F/V AKUTAN subject to the policy's terms and conditions, with a policy period from April 1, 2017, 12:00 a.m. to April 1, 2018, 12:01 a.m. (the "Policy").   The Policy was underwritten by STARR (28.5714%), ARGONAUT (57.1428%) and BERKSHIRE (14.2858%).   A true and complete copy of the Policy is attached hereto as Exhibit "A"; and the terms and conditions of which are fully incorporated herein.

13.     In addition to the Policy, SHPI also issued a Certificate of Financial Responsibility guaranty (the "CoFR guaranty") for the vessel AKUTAN.   The CoFR guaranty was effective from April 1, 2017 to September 27, 2017.

## BACKGROUND FACTS

14.     KLAWOCK contracted with Bristol Bay Seafoods, LLC to be their processor for the 2017 season.   As per the contract, the F/V AKUTAN was to be on the fishing grounds by June 15, 2017.

15.     The F/V AKUTAN did not arrive on the agreed date.   Instead, the vessel had been seized and/or arrested by Alaska Growth Capital Bidco, Inc. ("AGCB") for failure to

make payments on a loan that had been issued to KLAWOCK. The seizure and/or arrest was the result of a foreclosure action initiated on or about May 10, 2017 by AGCB in the United States District Court for the Western District of Washington at Seattle (Docket No. 17-cv-00734).

16.     The F/V AKUTAN was in the possession of AGCB and/or a custodian for approximately two (2) weeks before an agreement was reached where Defendant regained possession of the vessel.  Ultimately, the vessel arrived in Bristol Bay, Alaska on or about July 9, 2017 after an additional delay caused by a lost main engine.

17.     The F/V AKUTAN took deliveries of sockeye salmon from July 9 to 19, 2017.

18.     On July 23, 2017, the F/V AKUTAN anchored outside of Dillingham Harbor, Alaska with approximately 130,000 pounds of frozen sockeye onboard.  In the days that followed both an engine and a generator went down.

19.     In addition, discussions between AGCB and KLAWOCK regarding additional funding to run the vessel broke down and Defendant ran out of money.  By that point, several crewmembers had left the vessel and returned home unpaid.

20.     On or about August 5, 2017, the F/V AKUTAN departed Dillingham Harbor for Seattle, Washington.  At some point during the voyage, the vessel began to experience mechanical problems.  The vessel rerouted to Dutch Harbor, Alaska for repairs.  The F/V AKUTAN eventually anchored in Captain's Bay, Unalaska, Alaska.

21.     In the following days while the vessel remained anchored, the United States Coast Guard ("USCG") determined that the F/V AKUTAN posed a substantial threat of discharge of oil pollution into the waters of Captain's Bay because, among other reasons, (1) a sheared off crankshaft on the portside engine; (2) only one generator was operable; (3) the

starboard engine's sea chest showed signs of material degradation to pipes and valves and a patchwork of temporary repairs; and (4) the vessel was in danger of sinking.

22.     The USCG issued an Administrative Order requiring KLAWOCK to mitigate the substantial threat of discharge (the "First Administrative Order").  KLAWOCK did not respond to the First Administrative Order.

23.     Because of the lack of response to the Administrative Order, the USCG retained Resolve Marine to remove approximately 15,800 gallons of fuel and oily waste water from the vessel's bilges and slop tanks.  An additional 23,340 gallons of fuel was left onboard so that the vessel's refrigeration system and critical power systems, including the bilge pumps, would remain operable.

24.     After the fuel and oily waste water was removed from the vessel's bilges and slop tanks, the USCG determined that the vessel no longer posed a substantial threat of discharge.

25.     KLAWOCK abandoned the vessel as it remained anchored in Captain's Bay.

26.     On October 4 to 5, 2017, Captain's Bay experienced high winds, which caused the vessel to drag its anchor and come to rest 200 feet from shore.

27.     As a result, the USCG determined that the F/V AKUTAN posed a substantial threat of discharge of oil pollution into the waters of Captain's Bay.

28.     The USCG issued an Administrative Order to Larry Lang, an owner of KLAWOCK, to mitigate the substantial threat of discharge (the "Second Administrative Order"). SHPI was not provided with any notice of the Second Administrative Order.  Mr. Lang and/or KLAWOCK did not respond to the Second Administrative Order.

29. Because of the lack of response to the Administrative Order, the USCG retained Resolve Marine to remove the remaining 23,340 gallons of fuel onboard the vessel; and to sink the F/V AKUTAN.

## THE CLAIM

30. On or about June 12, 2018, the United States of America filed suit against KLAWOCK, Laurence Lang and SHPI for the costs and expenses incurred by the USCG to remove the aforementioned oil from the F/V AKUTAN and sink the vessel.  The case is pending in the United States District Court for the District of Alaska and bears Docket No. 18-cv-136 (the "Government Lawsuit")

31. KLAWOCK has requested that SHPI defend and indemnify it in the Government Lawsuit.

32. Based on the presently known facts and the law, Plaintiffs now deny the claim of Defendant for the reasons stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION

33. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "32" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

34. The F/V AKUTAN had (1) a sheared off crankshaft on the portside engine; (2) only one generator was operable; (3) the starboard engine's sea chest showed signs of material degradation to pipes and valves and a patchwork of temporary repairs; and (4) the vessel was in a general state of disrepair.

35. Therefore the vessel was unseaworthy at the time the USCG issued both Administrative Orders.

36.   The Policy provides in relevant part:

## CHAPTER 1

## GENERAL TERMS, CONDITIONS and LIMITATIONS

\*\*\*

(b)      The Insured's breach of any warranty, express or implied, contained in this Policy shall immediately void this Policy as of the time of the breach and no claim shall be paid under this Policy for losses arising after the breach.   The Company may, at its sole discretion, continue coverage provided that (i) it has received written notice of the breach from the Insured, and (ii) the Insured has paid any additional premium as the Company may require and the Company has confirmed in writing that coverage is continued.

(c)      It is warranted by the Insured that, after inception of the Policy, the Insured shall at all times use due diligence to maintain each of the Vessels named in the Vessel Schedule in a seaworthy condition.

37.   At all relevant times, Defendant did not exercise due diligence in maintaining the F/V AKUTAN in a seaworthy condition.

38.   At all relevant times, Defendant did not provide SHPI with written notice that it/they had breached its/their warranty to exercise due diligence to maintain the F/V AKUTAN in a seaworthy condition; or pay additional premium related to the same breach of warranty.

39.   By virtue of the foregoing premises, the Policy was void at the time the USCG issued both Administrative Orders and there is no coverage for the costs and expenses incurred by the USCG which are the subject of the Government Lawsuit.

## AS AND FOR A SECOND CAUSE OF ACTION

40.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "39", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

41.    Defendant did not disclose, among other things, that the F/V AKUTAN was in a state of complete disrepair; and had a substantial and significant amount of temporary/inadequate repairs and patchwork.  Defendant also did not disclose that it was in dire financial hardship; had defaulted on its loans; and did not have the funds to operate and/or properly repair and maintain the vessel.

42.    These non-disclosures of material facts violated the doctrine of uberrimae fidei and render the Policy void ab initio.

43.    Therefore Plaintiffs are not liable for any claims under the Policy related to the costs and expenses incurred by the USCG which are the subject of the Government Lawsuit.

44.    Because no premium was ever paid by Defendant for the Policy, Plaintiffs do not have a return of premium for the Policy.

## AS AND FOR A THIRD CAUSE OF ACTION

45.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "44", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

46.    The Policy states in relevant part:

**CHAPTER 5**
**EXCLUSIONS**

Notwithstanding any provision in this Policy to the contrary, this Policy does not provide coverage for any liability, loss, damage, cost or expense arising from:

***

(f)     the willful misconduct of the Insured, or the willful misconduct of any person if within the privity or knowledge of the Insured.

47.   Defendant's failure to maintain the F/V AKUTAN and/or put it in a complete state of disrepair was willful misconduct.

48.   Defendant's failure to comply with the USCG Administrative Order was willful misconduct.

49.   Defendant's abandonment of the F/V AKUTAN was willful misconduct.

50.   Therefore there is no coverage under the Policy for the costs and expenses incurred by the USCG which are the subject of the Government Lawsuit.

## AS AND FOR A FOURTH CAUSE OF ACTION

51.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "50", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

52.   The Policy states in relevant part:

## CHAPTER 7

## NOTICE

## SECTION 1: NOTICE TO THE COMPANY

(a)     IN THE EVENT OF ANY OCCURRENCE OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY, THE INSURED SHALL GIVE IMMEDIATE NOTICE OF SAID OCCURRENCE OR INCIDENT TO THE COMPANY. The Insured shall not make any admission of liability, either before or after any such Occurrence or incident, without the prior consent of the Company; except that the Insured may, without the prior consent of the Company, provide any reasonable cooperation and assistance requested by a responsible official pursuant to Section 1004(c)(2)(B) of the Act or Section

107(c)(2) of CERCLA.

\*\*\*

    (e)    LIMITATION DUE TO FAILURE TO NOTIFY: The Company will not have any exposure or liability under this Policy if, for lack of immediate notice an incident is made worse or more extensive because the Company was unable, for lack of immediate notice, to undertake effective managerial or remedial measures.

    53.    Defendant did not give immediate notice of the Second Administrative Order and/or that the USCG had determined that the F/V AKUTAN posed an imminent and substantial threat to the public health or welfare or the environment because of a threatened discharge of oil on or about October 5, 2017.

    54.    Defendant's failure to provide timely notice prejudiced Plaintiffs because they could not undertake managerial or remedial measures to mitigate the threat of discharge of oil before the USCG took over the response and incurred costs and expenses to remove the remaining fuel onboard the F/V AKUTAN and to sink the vessel.

    55.    Therefore there is no coverage under the Policy under the Policy for the costs and expenses incurred by the USCG related to the Second Administrative Order which are the subject of the Government Lawsuit.

## AS AND FOR A FIFTH CAUSE OF ACTION

    56.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "55", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

    57.    Defendant had an obligation to comply with the Administrative Orders and/or mitigate the threat of discharge.

58.   Defendant's failure to comply with the Administrative Orders caused additional costs and expenses to be incurred to respond to the threat of discharge..

59.   Defendant's failures in this regard prejudiced Plaintiffs' interests.

60.   Therefore there is no coverage under the Policy for the costs and expenses incurred by the USCG which are the subject of the Government Lawsuit.

## AS AND FOR A SIXTH CAUSE OF ACTION

61.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "60", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

62.   The costs and expenses to sink the vessel were not incurred to mitigate a substantial threat of discharge of oil and/or hazardous substance.

63.   Therefore there is no coverage under the Policy for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit.

## AS AND FOR A SEVENTH CAUSE OF ACTION

64.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "63", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

65.   The Policy states in relevant part:

## CHAPTER 7

## NOTICE

## SECTION 1: NOTICE TO THE COMPANY

\*\*\*

(b)      In the event that the Insured becomes insolvent, files an action for reorganization or liquidation in any court, or is

11

granted protection by any court, immediate notice shall be given to the Company.

(c)     The Insured shall also give prompt notice to the Company in the event that any Vessel named in the Schedule of Vessels is the subject of any action or legal proceeding seeking to arrest, seize or attach the Vessel for any reason.

66.    Defendant did not provide SHPI with immediate notice that it was insolvent.

67.    Defendant did not provide SHPI with prompt notice that AGCB had filed a foreclosure action; and seized and/or arrested the F/V AKUTAN.

68.    Defendant's failure to provide such notice prejudiced Plaintiff's interests.

69.    Therefore there is no coverage under the Policy for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit.

## AS AND FOR A EIGHTH CAUSE OF ACTION

70.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "69", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

71.    The Policy states in relevant part:

### CHAPTER 10

### CANCELLATION

\*\*\*

(d)     Notwithstanding the foregoing, where the Company has at the request of the Insured filed any evidence of insurance to satisfy the requirements of the Federal Government or any State or any political subdivision thereof on behalf of the Insured pursuant to the financial responsibility requirements under the Act, or CERCLA, or otherwise, and any applicable regulations thereunder, such guarantee cancellation shall be effective, at the Company option, either in accordance with Paragraphs (a) or (b) of CHAPTER 10 or on the effective date of the termination of liability under such evidence of insurance.

       (e)     If the Company issues any evidence of insurance provided to the Federal Government or any State or any political subdivision thereof on behalf of the Insured pursuant to the financial responsibility requirements under the Act, or CERCLA, or otherwise, and any applicable regulations thereunder, such guarantee shall be immediately cancelled and of no further force or effect upon cancellation of this Policy.  If the Company is required to pay any claim under such guarantee on behalf of the Insured for an Occurrence arising after this Policy has been cancelled or otherwise terminated, then the Insured agrees to, and shall, indemnify and hold harmless the Company from all loss, damage, cost, liability or expense paid pursuant to such guarantee.

72. Defendant's breach of the doctrine of <u>uberrimae</u> <u>fidei</u> voided the Policy <u>ab initio</u>.

73. Defendant's breach of its warranty of to exercise due diligence to maintain the F/V AKUTAN voided the Policy before the USCG issued both Administrative Orders.

74. SHPI would not have issued a CoFR guarantee for the F/V AKUTAN without the Policy in place.

75. In the Government Lawsuit, the United States of America is seeking to recover from SHPI all costs and expenses incurred by the USCG related to the First Administrative Order and Second Administrative Order pursuant to the CoFR guarantee SHPI issued for the F/V AKUTAN.

76. The Second Administrative Order was issued after SHPI cancelled its CoFR guarantee for the F/V AKUTAN.

77. Defendant should be required to indemnify, contribute and/or hold defendant SHPI harmless for any and all amounts which SHPI may be adjudged liable to pay in the Government Lawsuit and for its costs, including attorneys and disbursements incurred in the defense of that claim.

## AS AND FOR A NINTH CAUSE OF ACTION

78.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "77", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

79.    The Policy states in relevant part:

### CHAPTER 3

### LEGAL EXPENSE AND DEFENSE

The Company shall have the right and the duty to defend any Claims covered under SECTIONS 1 through 13 of CHAPTER 2 provided the Insured has purchased such Coverage.  The Company's duty to defend or duty to continue defending any such Claim, and to pay any Loss, shall cease once the applicable limit of liability, as described in the Declaration Page has been exhausted. Defense costs, charges and expenses are included in Loss and reduce the applicable limit of liability that applies and is shown on the Declaration Page and/or Schedule of Vessels.

80.    The claims alleged in the Government Lawsuit are not covered by thePolicy.

81.    Therefore there Defendant is not entitled to a defense and indemnity under the Policy.

WHEREFORE, Plaintiffs SAFE HARBOR POLLUTION INSURANCE, STARR INDEMNITY & LIABILITY COMPANY, ARGONAUT INSURANCE COMPANY and BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY pray for judgment against Defendant KLAWOCK OCEANSIDE, INC. as follows:

A.    in favor of Plaintiffs and against Defendant on the First Cause of Action for judgment declaring that SHPI Policy No. V-13741-17 was void at the time the USCG issued the First Administrative Order and Second Administrative Order; and therefore there is no coverage

under the Policy for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit;

      B.    in favor of Plaintiffs and against Defendant on the Second Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13741-17 for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit by reason that the Defendant violated the doctrine of <u>uberrimae fidei</u> which renders the Policy void <u>ab initio</u>;

      C.    in favor of Plaintiffs and against Defendant on the Third Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13741-17 for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit because Defendant's actions were willful misconduct;

      D.    in favor of Plaintiffs and against Defendant on the Fourth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13741-17 for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit because Defendant failed to provide timely notice of the Second Administrative Order and prejudiced Plaintiffs' rights;

      E.    in favor of Plaintiffs and against Defendant on the Fifth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13741-17 for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit because Defendants failed to mitigate and prejudiced SHPI's rights;

      F.    in favor of Plaintiffs and against Defendant on the Sixth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13741-17 for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government

Lawsuit because the sinking of the F/V AKUTAN were not incurred to mitigate a substantial threat of discharge of oil and/or hazardous substances;

G.    in favor of Plaintiffs and against Defendant on the Seventh Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13741-17 for the costs and expenses incurred by the USCG to sink the vessel which are the subject of the Government Lawsuit because Defendant failed to provide timely notice of the foreclosure action and/or that the F/V AKUTAN had been seized and/or arrested and prejudiced Plaintiff's rights;

H.    in favor of Plaintiffs and against Defendants on the Eighth Cause of Action for judgment awarding SHPI indemnity, contribution and/or to be held harmless for any and all amounts which SHPI may be adjudged liable to pay in the Government Lawsuit and for its costs, including attorneys and disbursements incurred in the defense of that claim;

I.    in favor of Plaintiffs and against Defendant on the Ninth Cause of Action for judgment declaring that there is no obligation to defend and indemnify Defendant under SHPI Policy No. V-13741-17 in the Government Lawsuit; and

J.    in favor of Plaintiffs for such other and further relief that this Court may deem just and proper, together with costs and disbursements of this action.

Dated:     New York, New York
             September 18, 2018

NICOLETTI HORNIG & SWEENEY
*Attorneys for Safe Harbor Pollution Insurance, Starr Indemnity & Liability Company, Argonaut Insurance Company and Berkshire Hathaway Specialty Insurance Company*

By:    s/ Guerric S.D.L. Russell
       Guerric S.D.L. Russell (GR-4845)
       Wall Street Plaza
       88 Pine Street, 7th Floor
       New York, New York 10005-1801
       Tel: (212) 220-3830
       Fax: (212) 220-3780
       E-mail: grussell@nicolettihornig.com
       (FILE NO.:  101000025 GSR)